IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DOUGLAS LEW GEARY,

    Plaintiff,

v.                 Case No. 13-4106-JTM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

**MEMORANDUM AND ORDER**

Plaintiff Douglas Geary seeks review of a final decision by defendant, the Commissioner of Social Security ("Commissioner"), denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). Plaintiff alleges that the Commissioner's determination of impairment and residual functioning capacity ("RFC") was not supported by substantial evidence. Upon review, the court finds that the Commissioner's decision is supported by substantial evidence contained in the record. Accordingly, the Commissioner's final decision on the matter is affirmed.

**I. Background**

*A. Medical History*

Plaintiff's medical issues seem to date back to a work-related back injury in early 2000. Dkt. 14, at 2. He had back surgery to alleviate the problem in July of 2000. Dkt. 14, at 2. After the surgery, plaintiff presented on several occasions to his primary physician, Dr. Richard L. Hull, D.O., complaining of back pain. Dkt. 9-9, at 2-42. Dr. Hull noted on

1

July 3, 2003, that plaintiff had "incapacitating back pain" and was "incapacitated for any job presently." Dkt. 9-9, at 18. On July 22, 2003, Dr. Hull noted "good pain control" and dramatically improved functional capacity. Dkt. 9-9, at 19. Plaintiff returned to work in 2003, working as many as three part-time jobs at once between 2003 and 2009. Dkts. 9-3, at 37; 14, at 3. Dr. Hull again noted improvement in plaintiff's back pain on February 3, 2004. Dkt. 9-9, at 36. Plaintiff continued seeing Dr. Hull for primary medical care until February 17, 2006. Dkt. 9-8, at 5.

Plaintiff was terminated from his last job in August 2008 for poor attendance. Dkt. 9-3, at 37. Plaintiff attributes his poor attendance to back and leg pain. Dkt. 9-3, at 37. However, an agent of the employer reported that plaintiff was fired because he was unreliable. Dkt. 9-7, at 82. The employer's agent specifically noted that plaintiff "always had somewhere else he had to be" and "needed supervision or would fiddle the day away." Dkt. 9-7, at 82-83. The employer's agent also noted that plaintiff frequently arrived late, left early, and did not follow through with job duties even after being shown what to do. Dkt. 9-7, at 81-83.

Plaintiff did not resume medical treatment until February 23, 2011, when he was treated by Timothy Spears, D.O. Dkt. 9-10, at 2. Dr. Spears opined that "it would be hard for [plaintiff] to work." Dkt. 9-10, at 2.  On March 5, 2011, a consulting medical examination was performed for Disability Determination Services ("DDS") by Shawn Morrow, D.O. Dkt. 9-8, at 16-19. Dr. Morrow reported limited range of motion with paravertebral spasms and "moderate to severe difficulty with orthopedic maneuvers." Dkt. 9-8, at 18. A consultative RFC assessment was performed by Dr. Nisha Singh, M.D.,

on April 8, 2011, which opined occasional postural limitations but no limitations when reaching in all directions, handling, fingering, or feeling. Dkt. 9-8, at 22. On April 9, 2011, Kevin S. Hughes, D.O., read an MRI of plaintiff's lumbar spine and noted "[l]umbar degenerative disc disease worse at L4-L5 and L5-S1 with small bulging disk at L5-S1." Dkt. 9-8, at 33.

On June 8, 2011, plaintiff was examined by neurosurgeon Phillip Hylton, M.D., at the University of Kansas Comprehensive Spine Center. Dkt. 9-8, at 38-41. Dr. Hylton noted that plaintiff complained of whole spine pain from his neck to his feet, involving both legs and both arms from shoulder to elbow. Dkt. 9-8, at 38. MRI testing showed what Dr. Hylton classified as "mild-to-moderate degenerative changes at L4-L5 with no neurologic compression," and "moderate stenosis and postsurgical changes at L5-S1 to the left, otherwise negative exam." Dkt. 9-8, at 38. Dr. Hylton concluded that plaintiff had no musculoskeletal abnormalities that required surgery, but that he had "impressive comprehensive myofascial pain syndrome, which is rather diffuse." Dkt. 9-8, at 39.

In a DDS consultative report on July 26, 2011, C.A. Parsons, M.D., concluded that "there is not sufficient [medical records] to assess the [plaintiff's] functioning prior to DLI." Dkt. 9-8, at 43. Plaintiff was subsequently treated by Kevin Latinis, M.D., on September 26, 2011. Dkt. 9-9, at 48-49. Dr. Latinis diagnosed plaintiff with osteoarthritis, low back pain, and fibromyalgia syndrome. Dkt. 9-9, at 49. However, Dr. Latinis noted that plaintiff had no overt inflammatory arthritis in any of his extremities. Dkt. 9-9, at 48. Dr. Latinis also recorded that plaintiff arrived wearing a back corset, left wrist brace,

and bilateral knee braces. Dkt. 9-9, at 48. On October 18, 2011, plaintiff returned to Dr. Spears, who prescribed a quad cane for instability and weakness. Dkt. 9-10, at 10. In response to interrogatories dated April 3, 2012, Dr. Spears testified that plaintiff had been disabled since at least February 2010. Dkt. 9-10, at 40.

Plaintiff claims he is only able to walk one hundred feet, that he needs assistance doing errands and housework, and that his daily activities are limited to "waking up depending on the day." Dkt. 9-7, at 14-15. Plaintiff claims he experiences pain daily from the time he gets up until the time he lays back down. Dkt. 9-7, at 13. Plaintiff's wife, Gina Veerkamp-Geary, submitted a Third Party Function Report on June 4, 2011. Dkt. 9-7, at 72. Veerkamp-Geary similarly indicated that plaintiff has very limited daily function because of pain; notably, that she has to help him put on socks, get onto his feet, and bathe. Dkt. 9-7, at 73.

*B. Procedural History*

On October 5, 2010, plaintiff filed application for DIB with disability allegedly beginning April 1, 2010. Dkt. 9-3 at 10. Plaintiff's claim was denied on May 10, 2011, and again upon reconsideration on July 27, 2011. Dkt. 9-3, at 10. Plaintiff timely filed a request for an administrative hearing, which took place on May 23, 2012, before an Administrative Law Judge ("ALJ"). Plaintiff, represented by counsel, appeared and testified. Dkt. 9-3, at 29-65. The ALJ determined that plaintiff: was last insured on September 30, 2010; did not engage in substantial gainful activity between April 1, 2010, and September 30, 2010; suffered the severe impairments of myofascial pain syndrome/fibromyalgia and disorders of the back; and did not have an impairment or

4

combination of impairments equal to a listed impairment. The ALJ then proceeded with an RFC determination and concluded that, during the time in question, plaintiff had:

> the residual functional capacity to perform sedentary work . . . involving lifting and/or carrying 10 pounds occasionally and less than 10 pounds frequently; walking and/or standing two hours out of an eight-hour workday; and sitting for six hours out of an eight-hour workday. He can occasionally climb stairs; but never climb ropes, scaffolds or ladders. The claimant can occasionally balance, stoop, crouch, kneel and crawl. He must avoid prolonged exposure to vibrating machinery. He must avoid unprotected heights and moving machinery. Secondary to reported chronic pain and potential side effects of medications, he is limited to jobs that do not demand attention to details or complicated job tasks or instructions.

Dkt. 9-3 at 14. The ALJ's narrative noted that his RFC determination was based on an evaluation of all of plaintiff's symptoms, the objective medical evidence, and all other evidence in the record. Dkt. 9-3, at 14. The ALJ's ruling stands as the Commissioner's final decision on the matter and is reviewable by this Court under 42 U.S.C. § 405(g).

## II. Legal Standard

This court reviews the ALJ's decision under 42 U.S.C. § 405(g) to "determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (citation omitted). "Substantial evidence requires more than a scintilla but less than a preponderance." *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (citation omitted). The court's role is not to "reweigh the evidence or substitute its judgment for the Commissioner's." *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008). The

5

possibility that two inconsistent conclusions may be drawn from the evidence does not preclude a finding that the Commissioner's decision was based on substantial evidence. *Zolantski*, 372 F.3d at 1200.

An individual is under a disability only if he or she can "establish that [he] has a physical or mental impairment which prevents [him] from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley v. Astrue*, 2010 U.S. Dist. LEXIS 76220, at *3 (D. Kan. July 28, 2010) (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has prescribed a five-step sequential analysis to determine whether disability existed between the time of claimed onset and the date the claimant was last insured under the Act. *Wilson*, 602 F.3d at 1139; 20 C.F.R. § 404.1520(a)(4). If the trier of fact finds at any point during the five steps that the claimant is disabled or not disabled, the analysis stops. *Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). The first three steps require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe or combination of severe impairments; and (3) whether the severity of those impairments meets or equals a listed impairment. *Wilson*, 602 F.3d at 1139 (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir.

2007)). If the impairments do not meet or equal a designated listing in step three, the Commissioner then assesses the claimant's RFC based on all medical and other evidence in the record. 20 C.F.R. § 404.1520(e). RFC is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from [his] impairments." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545. The Commissioner then proceeds to step four, where the RFC assessment is used to determine whether the claimant can perform past relevant work. 20 C.F.R. § 404.1520(e); *Lax*, 489 F.3d at 1084. The claimant bears the burden in steps one through four of proving disability that prevents performance of his past relevant work. *Lax*, 489 F.3d at 1084; 42 U.S.C. § 423(d)(5)(A).

If a claimant meets the burdens of steps one through four, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC to perform work in the national economy, given [his] age, education, and work experience." *Lax*, 489 F.3d at 1084 (brackets omitted).

### III. Analysis

Plaintiff argues that the RFC determination is improper because the ALJ erred in (1) assessing the credibility of plaintiff's subjective complaints, (2) determining whether to grant controlling weight to the opinion of a treating physician, and (3) weighing the opinion of plaintiff's spouse.

*A. Credibility of Claimant's Subjective Complaints*

A claimant's subjective complaints of debilitating pain are evaluated for credibility under a three-step analysis that asks:

7

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)). The claimant's daily activities, reported symptom severity, treatment history, treatment side effects, precipitating or aggravating factors of the claimed symptoms, work record, and other functional limitations are compared to the other relevant evidence to determine the credibility of his complaints. 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ will also consider "a claimant's persistent attempts to find relief for [his] pain and [his] willingness to try any treatment prescribed," regularity of contact with his doctor, possible psychological disorders that may combine with physical problems, daily activities, and daily dosage and effectiveness of medications. *Keyes-Zachary*, 695 F.3d at 1167. Discontinuation of prescribed treatment counts against the credibility of plaintiff's subjective complaints. *Romero v. Astrue*, 242 Fed. Appx. 536, 543 (10th Cir. 2007) (citing *Luna*, 834 F.2d at 165). The ALJ need not make a "formalistic factor-by-factor recitation of the evidence" if he specifies evidence relied on in the credibility analysis. *Id.* (citing *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

The ALJ determined that plaintiff's subjective complaints of debilitating pain merited little weight because: (1) no objective evidence in the record indicates treatment during the time in question or daily activity limitations; (2) medical records from after

the time in question do not support plaintiff's reported symptom severity; and (3) plaintiff's work history did not accord with his claims of debilitating pain.

The record contains no treatment history during the time in question. Dkt. 9-3, at 26. Plaintiff received treatment for his alleged pain only before and after the time in question. Although plaintiff attributes his non-treatment during the time in question to a lack of insurance, the record does not indicate that plaintiff made any attempt to obtain coverage or treatment during that time. Dkt. 9-3, at 16. Even if plaintiff's claimed daily activity limitations are taken as true, the lack of medical evidence from the time in question makes it more difficult to attribute the severity of the limitations to one of the established impairments. Plaintiff also testified that medications used during the time in question caused him to feel "groggy," but, again, there are no medical records from that timeframe to support this claim. The lack of objective evidence from the time in question weighs strongly against plaintiff's subjective complaints of debilitating pain during that time.

Plaintiff's medical records from after the time in question do not strongly support his subjective complaints of debilitating pain during the time in question. Plaintiff's first medical records after 2007 are from an office visit with Dr. Spears on February 23, 2011, where he complained of severe "head to toe pain." Dkt. 9-8, at 28. However, Dr. Spears noted a normal musculoskeletal exam and diagnosed lower back pain. Dkt. 9-8, at 28. On March 5, 2011, Dr. Morrow's DDS consultative exam noted some limited range of motion with paravertebral muscle spasms and moderate to severe difficulty with orthopedic maneuvers, but subsequent visits with other

9

physicians and specialists noted no such limitations or musculoskeletal abnormalities. No medical records from after 2007 suggest a need for further surgery, suggesting that plaintiff's back is not a source of debilitating pain. Dkts. 9-8, at 11-43, 73-76; 9-9, at 43-49; 9-10, at 2-41. For example, on June 8, 2011, Dr. Hylton, an orthopedic specialist, specifically noted that plaintiff's MRI results showed "absolutely no structural surgically correctable abnormality" and no neurologic compression. Dkt. 9-8, at 38-39. Further, Dr. Spears noted on March 6, 2012, that plaintiff had not been taking his medication for fibromyalgia regularly, which weighs against the credibility of plaintiff's claims of debilitating pain. Dkt. 9-10 at 35. The objective medical evidence shows inconsistent reports of pain, a lack of associated physiological diagnosis, and suboptimal treatment compliance.

Finally, plaintiff claims to have stopped working in August 2008 due to his pain. Dkt. 9-7, at 6. However, an agent of his former employer reported that he was actually fired for a lack of reliability – he required constant supervision, or he would "fiddle the day away," he "always had somewhere else he had to be," and he frequently arrived late, left early, or did not come to work at all. Dkt. 9-7, at 83. This work history report is inconsistent with plaintiff's claims. In short, plaintiff's subjective claims are not supported by objective evidence from the time in question, are not supported by reliable medical data after the fact, and his claims are inconsistent with other evidence in the record. The ALJ's determination that plaintiff's subjective complaints should receive little credibility is supported by substantial evidence.

*B. Weighing a Treating Physician's Opinion*

The ALJ determines RFC by evaluating a claimant's impairments that are "demonstrable by medically acceptable clinical and laboratory diagnostic techniques," then weighing evidence to determine the nature and severity of those impairments. 20 C.F.R. §§ 404.1527(a), 416.927(a). Such evidence may include medical opinions, other opinions, and a claimant's subjective complaints. *Id.*; *see also Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009). Statements from physicians are considered "medical opinions" for the RFC determination. 20 C.F.R. §§ 404.1527(a), 416.927(a).

Medical opinions are weighed by evaluating all relevant factors including: (1) the length, nature, and extent of any examining or treatment relationship; (2) whether the opinion source presents supporting evidence, such as medical signs and laboratory results; (3) how well the source explains the opinion; (4) whether the opinion is consistent with the record; (5) whether the source has a specialty related to the claimant's impairments; and (6) all other relevant factors of which the ALJ is aware that may bear on what weight should be given to a medical opinion. 20 C.F.R. §§ 404.1527, 416.927; *see Knight ex rel P.K. Colvin*, 756 F.3d 1171, 1176-77 (10th Cir. 2014). "[T]he ALJ must give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Knight*, 756 F.3d at 1177 (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

A treating physician's statement is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quoting SSR 96-2p, 1996 WL

374188, at *2). If the treating physician's statement is not well-supported or is otherwise inconsistent with substantial evidence on record, then it is not entitled to controlling weight and is weighed as any other medical opinion. *Id.*

The ALJ determined that Dr. Spears's opinion is not entitled to controlling weight because (1) it is unsupported by clinical and laboratory testing; (2) it is inconsistent with other evidence in the record; and (3) other relevant factors call its reliability into question.

No objective medical evidence from the time in question exists, and therefore cannot support Dr. Spears's opinions. Evidence of clinical, laboratory, and medical imaging testing from after the time in question indicate no musculoskeletal impairment associated with extreme pain. Dr. Spears's own clinical evaluations note normal musculoskeletal findings. Dkts. 9-7, at 16-29; 9-10, at 2-37. While Dr. Spears had prescribed plaintiff a cane and braces, Dr. Latinis and Dr. Hylton did not indicate a need for any such support devices. Dkts. 9-8, at 37-41; 9-9, at 47-49. Rather, Dr. Hylton noted that plaintiff had no neurologic compression, which provides no objective evidentiary support for the need of a cane or lower extremity braces. Dkt. 9-8, at 38.

Dr. Spears's opinion is inconsistent with other objective medical evidence in the record. While Dr. Spears opined that plaintiff had "advanced degenerative disc disease" based on an MRI dated April 9, 2011, Dr. Hylton read MRI results on June 8, 2011, as showing only "mild-to-moderate degenerative" changes at L4-L5 with no disc compression. Dkts. 9-10, at 40; 9-8, at 38. On April 11, 2011, Dr. Hughes read an MRI of plaintiff's lower spine, noting "degenerative disc disease worse at L4-L5 with small

bulging disk at L5-S1," but not advanced degenerative disease. Dkt. 9-8, at 33. Further, Dr. Singh opined that plaintiff could perform light work, not that he was limited to sedentary work or disabled. Dkt. 9-8, at 20-25.

Finally, Dr. Spears opined that plaintiff had been disabled since at least as early as February 2010, a year before Dr. Spears ever saw plaintiff. Dkt. 9-10, at 40. Dr. Spears based this entirely retroactive opinion on his interpretation of an MRI dated April 9, 2011. Dkt. 9-10, at 40. However, Dr. Spears does not have a specialty in orthopedics, neurosurgery, or radiology. The ALJ's determination that Dr. Spears's opinion did not merit controlling weight is supported by substantial evidence in the record.

## C. Weighing Other Opinions

Finally, plaintiff argues that the ALJ should have granted greater weight to the function report filed by Veerkamp-Geary. The opinions of a spouse are "other opinions" for determining a claimant's RFC. 20 C.F.R. § 404.1513. The factors for evaluating medical opinions are also used to evaluate other, non-medical opinions. SSR 06-03p, 2006 WL 2329939, at *4-5 (Aug. 9, 2006). The ALJ determined that Veerkamp-Geary's Third Party Function Report should receive little weight because (1) it "appears to be no more than a parroting of the subjective complaints already testified to and reported by [plaintiff]," (2) she is likely biased, (3) she has a financial interest in the outcome, and (4) her testimony was not given under oath. Dkt. 9-3, at 20.

Veerkamp-Geary's report opines the same limitations described by plaintiff. Dkt. 9-7, at 72-79. It is thus similarly inconsistent with other evidence in the record and unsupported by any objective medical evidence from the time in question. Veerkamp-

13

Geary's credibility is naturally assailable because, as plaintiff's spouse, she is no doubt biased to some extent. *See Jeffries v. Soc. Sec. Admin.*, 358 Fed. Appx. 25, 33 (10th Cir. 2009) (affirming where the ALJ gave little weight to a spouse's opinion due to bias). Veerkamp-Geary's report states that plaintiff was formerly the primary wage-earner in the Geary household, showing that she has a financial interest in the outcome of the disability determination. Finally, her report was not given under oath – which does not entirely undermine her testimony, but surely does not bolster its credibility. The ALJ's determination that Veerkamp-Geary's function report warranted little weight is supported by substantial evidence in the record.

IT IS ACCORDINGLY ORDERED this 30th day of September, 2014, that the Commissioner's decision is AFFIRMED.

 s/ J. Thomas Marten
J. THOMAS MARTEN
CHIEF JUDGE